UNITED STATES DISTRICT COURT
EASTER DISTRICT OF LOUISIANA

| | |
|---|---|
| SOUTHEAST LOUISIANA BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL-CIO, AN UNINCORPORATED ASSOCIATION | CIVIL ACTION |
| V. | NO.: 13-370 |
| STATE OF LOUISIANA, EX REL. BOBBY JINDAL, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF LOUISIANA; | |
| JAMES D. "BUDDY" CALDWELL, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF LOUISIANA | SECTION "K"(5) |

### ORDER AND REASONS

Before this Court are defendants' and intervenors' Motions to Dismiss under Rule 12(b)(1). (Rec. Doc. 20 and 21). After reviewing the pleadings, memoranda, and relevant law, the Motions are GRANTED in part and DENIED in part.

I.  PROCEDURAL AND FACTUAL BACKGROUND

In its complaint, the plaintiff challenges the constitutionality of Louisiana's "Open Competition Law" and alleges the following facts. Louisiana Act No. 134 enacted the Open Competition Law in Louisiana Revised Statute 38:2225.5 ("Act 134"), a "comprehensive prohibitory scheme directed at public entities who may engage in procurement of services or the letting of contracts for construction, manufacture, or public works operation." (Rec. Doc. 1, at 3). Louisiana Revised Statute 38:2225.5 provides:

> A. Except as provided in Subsection E of this Section or as required by federal law, each public entity, when engaged in procuring products or services or letting contracts for construction,

1

> manufacture, or operation of public works paid for in whole or in part by state or local funds, or when overseeing or administering such procurement, construction, manufacture, or operation, shall ensure that bid specifications, project agreements, and other controlling documents, entered into, required, or subject to approval by the public entity do not:
>
>> (1) Require bidders, offerors, contractors, subcontractors, or operators to:
>>> (a) Enter into or adhere to agreements with one or more labor organizations on the same or related projects.
>>> (b) Enter into any agreement whereby the public entity is required to remain neutral toward any labor organization.
>>> (c) Pay predetermined or prevailing wages . . . .
>
> B. No public entity shall provide financial assistance, issue a grant, or enter into a cooperative agreement for any project a condition of which requires that bid specifications, project agreements, or other controlling documents pertaining to the financial assistance, grant, or cooperative agreement contain any of the elements prohibited in Subsection A of this Section.

Section (A)(1) of the statute effectively prohibits public entities from entering into "project labor agreements," a type of prehire agreement in the construction industry. A "prehire agreement" is a collective bargaining agreement that is negotiated before the start of a construction project. (Rec. Doc. 22, at 2). Project labor agreements ("PLAs") are multi-craft prehire agreements negotiated between building and construction managers to govern labor relations and terms and conditions of employment on a construction project. (Rec. Doc. 1, at 4). Section 8(f) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(f), authorizes the use of prehire agreements in the building and construction industry, while section 8(e) of the NLRA, 29 U.S.C. § 158(e), authorizes prehire agreements to include contracting and subcontracting agreements whereby an employer agrees to contract or sub-contract work only to an employer who abides by the PLA. (Rec. Doc. 1, at 4). Taken together, plaintiff alleges that both sections of the NLRA

2

validate the practice of adopting PLAs as a means of "systemizing the terms and conditions of employment that will prevail throughout the length of a construction project." (Rec. Doc. 1, at 4).

Plaintiff Southeast Louisiana Building and Construction Trades Council, AFL-CIO is an unincorporated association and labor organization comprised of member labor organizations. (Rec. Doc. 1, at 2; Rec. Doc. 22, at 4). The Council represents the member labor organizations or building and construction trade unions, enabling building and construction workers to "achieve a powerful voice in government, in bargaining, and in their communities." (Rec. Doc. 22, at 4-5). The Council's representation includes negotiation of project labor agreements ("PLAs"). (*See* Rec. Doc. 22, at 3). Because Act 134 prevents the Council's member organizations from entering into PLAs with public entities, the plaintiff asserts that "[g]enerally, the Council will directly suffer the loss of PLA's [sic], thereby causing its member unions a loss of signatory contractors." (Rec. Doc. 22, at 6). Such contracts "provide jobs to union members at a negotiated wage rate, contributions to these members' pension and employee benefit funds, and dues to local unions." (Rec. Doc. 22, at 6). Louisiana has employed PLAs on a variety of public works projects, including projects of the City of New Orleans at the Louis Armstrong International Airport. (Rec. Doc. 22, at 3). The City of New Orleans and its New Orleans East Hospital District A announced in January of 2013 its intention to build a new hospital through a PLA. (Rec. Doc. 22, at 3). Despite the City of New Orleans' intention to enter into a PLA—and according to Mayor Mitch Landrieu, potentially with the Council—the Housing Authority of New Orleans informed the Council that Act 134 prohibits the City from entering into such an agreement with the Council. (Rec. Doc. 22, at 7-8). Therefore, due to its inability to enter into PLAs with public entities, such as with the City of New Orleans and New Orleans East Hospital

3

District A, the plaintiff contends that Act 134 interferes with the plaintiff's rights under the NLRA.

Plaintiff, Southeast Louisiana Building and Construction Trades Council, AFL-CIO ("Council"), initiated the instant suit on February 27, 2013. Plaintiff's complaint names as defendants Bobby Jindal in his official capacity as Governor of Louisiana and Louisiana Attorney General James D. Caldwell in his official capacity, and asserts that the enforcement of Louisiana Act No. 134 of the 2011 Regular Session violates the Supremacy Clause and Contract Clause of the United States Constitution and violates the National Labor Relations Act ("NLRA"). Specifically, plaintiff raises a cause of action under 42 U.S.C. §1983 asserting that Act 134 interferes with plaintiff's rights under §§ 7 and 8 of the NLRA. Plaintiff seeks injunctive and declaratory relief, requesting that Act 134 be declared invalid and unenforceable as preempted by the Supremacy Clause of the United States Constitution and the NLRA and violates NLRA §§ 7 and 8 as well as enjoining the enforcement of Act 134 by the defendants. Associated Builders and Contractors, Inc. (Louisiana, New Orleans-Bayou, and Pelican Chapters) ("intervenors") intervened on May 2, 2010, having an interest in the constitutionality of Act 134 as proponents of the Open Competition Law. (Rec. Doc. 11 and 12).

Defendants and intervenors filed the instant Motions to Dismiss under Rule 12(b)(1) on July 29, 2013 and August 6, 2013, respectively. Both defendants and intervenors argue that the plaintiff does not have standing to bring the instant action, and, therefore, this Court lacks jurisdiction to adjudicate the matter. (Rec. Doc. 20, at 3; Rec. Doc. 21, at 3). In addition, in the event the Court finds that the plaintiff does have standing, the defendants argue that they are immune from suit under the Eleventh Amendment. (Rec. Doc. 20, at 6). They contend that

plaintiff may not sue the defendants under *Ex Parte Young*'s exception to the Eleventh Amendment.

## II.   LEGAL STANDARD

A Rule 12(b)(1) motion to dismiss challenges the subject matter jurisdiction of a federal court. A claim is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim. *See Home Builders Assoc., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998). A 12(b)(1) motion may be appropriate when a plaintiff's claim is barred by sovereign immunity, as well as in the typical situation where a defendant alleges that there is no diversity of citizenship between the parties, jurisdictional amount, and/or the plaintiff's claim does not involve a federal question. *See* 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1350 (2d ed.2003).

Because federal courts are courts of limited jurisdiction, absent jurisdiction conferred by statute, they lack the power to adjudicate claims. *See, e.g.*, *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir.1998). Thus, a federal court must dismiss an action whenever it appears that subject matter jurisdiction is lacking. *Stockman*, 138 F.3d at 151.

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof,* 241 F.3d 420, 424 (5th Cir.2001). Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record. *See Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986). Uncontroverted

allegations of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As,* 241 F.3d at 424.

**III.   STANDING**

A plaintiff must have standing before a federal court may entertain his or her suit. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The Supreme Court has noted the following:

> It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.

*Lewis v. Casey*, 518 U.S. 343, 350, 116 S.Ct. 2174, 2179, 135 L.Ed.2d 606.  In *Lujan v. Defenders of Wildlife*, the Supreme Court outlined the requirements necessary to satisfy standing:

> The irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent not conjectural or hypothetical ... Second, there must be a causal connection between the injury and the conduct complained of ... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, at 560–61, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (quotations omitted).  The party invoking federal jurisdiction bears the burden of proof in establishing all three elements. *Id.* at 561, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351.  "Failure to establish any one [of them] deprives the federal courts of jurisdiction to hear the suit." *Rivera v. Wyeth–Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir.2002).  Standing is an indispensable part of the plaintiff's case. Accordingly, "each element must be supported in the same way as any other matter on which the

plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation." *Parents for Educational Justice v. Picard*, 2000 WL 526864, *2 (E.D.La.2000), citing *Lujan*, 504 U.S. at 561, 112 S.Ct. at 2136–37. At the pleading stage, general factual allegations of injury resulting from defendants' conduct may suffice. *See Lujan*, 504 U.S. at 561, 112 S.Ct. at 2136–37; *Picard*, 2000 WL 526864 at *2.

After considering the constitutional elements of standing, the court then considers whether prudential standing concerns, which are a set of "judicially self-imposed limits on the exercise of federal jurisdiction" that can be modified or abrogated by Congress, apply. *Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (internal quotation marks omitted). Specifically, courts must consider three "prudential concerns":

> (1) whether the plaintiff's complaint falls within the zone of interest protected by the statute or constitutional provision at issue;
> 
> (2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and
> 
> (3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of another.

*Murray v. City of Austin*, 947 F.2d 147, 151 (5th Cir.1991), *cert. denied*, *663 505 U.S. 1219, 112 S.Ct. 3028, 120 L.Ed.2d 899 (1992); *Picard*, 2000 WL 526864 at *2. These "prudential concerns" often overlap with the constitutional elements.

Defendants and intervenors assert that plaintiff's inability to enter into a PLA fails to show a concrete injury. (Rec. Doc. 20, at 5; Re.c Doc. 21, at 3). Defendants claim that no causation exists or is not "traceable" to the defendants because the Attorney General "played no role in the passage and/or implementation of this law" and the Governor's signing the bill into law would present a "tenable [connection] at best." (Rec. Doc. 20, at 5-6). Intervenors claim that the plaintiff failed to allege any injury in fact based "only on an alleged statement by an

7

unidentified construction manager" who informed the plaintiff that a PLA for the Hospital District A project was unavailable to it. (Rec. Doc. 21, at 3). Defendants assert in addition that neither the Attorney General nor the Governor "have the power to redress the injury." (Rec. Doc. 20, at 5-6). The Council, on the other hand, asserts that the denial of PLAs causes a concrete injury which may be redressed by the enjoining of the enforcement of Act 134 and by a declaration of its unconstitutionality. Several factors in this case impact the standing analysis, including the following facts: (1) that the plaintiff is an organization asserting standing on behalf of its members; (2) that the plaintiff seeks injunctive and declaratory relief; and (3) that the defendants challenge plaintiff's standing in the context of a Rule 12(b)(1) motion to dismiss.

In this matter, the Council is not an individual asserting standing but rather an organization asserting standing on behalf of its members. (Rec. Doc. 22, at 6). While an organization may have standing to sue on its own behalf (just as would an individual), *Henderson v. Stalder*, 287 F.3d 374, 381-82 (5th Cir. 2002), an organization may also have "associational standing" and assert the standing of its members. *Summers v. Earth Island Inst.* 555 U.S. 488, 494; 129 S. Ct. 1142, 1149, 173 L. Ed. 2d 1 (2009); *Advocacy Ctr. for Elderly & Disabled v. Louisiana Dep't of Health & Hospitals*, 731 F. Supp. 2d 583 (E.D. La. 2010). The Supreme Court has recognized certain criteria in determining whether an organization may assert standing on behalf of its members:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

8

*Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 2441, 53 L. Ed. 2d 383 (1977). Applying *Hunt's* analysis, the Council asserts standing for the following reasons: (1) the denial of PLAs results in a loss of signatory contracts to its union members, affording those members standing in their own right; (2) the interests of those members in acquiring PLAs is germane to the Council's purpose in providing support to its members and achieving a "powerful voice" in bargaining; and (3) neither the declaratory relief nor injunctive relief sought require the participation of the individual labor organization members. (Rec. Doc. 22, at 6-7). This Court agrees that the interests the Council seeks to protect are germane to its purpose and that neither the claim asserted nor relief requested require the individual labor organization's participation for the reasons plaintiff cites. The question of whether the individual members have standing involves the same analysis as the determination of whether the Council itself has standing. Although defendants and intervenors did not challenge this point, the Court will assume that the individual members would have standing so as to proceed with the standing analysis.

In addition to asserting associational standing, plaintiff seeks injunctive and declaratory relief in its complaint, which impacts the standing analysis.[1] When determining if a plaintiff has standing for injunctions, "an additional inquiry is required, namely that Plaintiffs show that they are likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury." *James v. City of Dallas, Tex.*, 254 F.3d 551, 563 (5th Cir. 2001) (citations omitted). "[I]f the injury is accompanied by 'any continuing, present adverse effects,' standing for injunctive relief can be found." *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102,

---

[1] *See Okpalobi v. Foster*, 244 F.3d 405, at 434 (5th Cir. 2001) (Benavides, J., concurring in part and dissenting in part) ("[T]heSupreme Court has repeatedly recognized 'that different considerations enter in a federal court's decision as to declaratory relief, on the one hand, and injunctive relief, on the other." (internal quotation marks omitted)).

103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)).  For declaratory relief sought under the Declaratory Judgment Act, a federal court may afford parties early adjudication of an actual controversy. *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 170 (5th Cir. 1990).  As with injunctions, courts have long held that parties bringing the declaratory judgment action must be proper parties; thus, there must be "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Okpalobi v. Foster*, 244 F.3d 405, 434 (5th Cir. 2001) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.* 312 US 270, 273 (1941)) (citations and internal quotation marks omitted).

Finally, the defendants' and intervenors' challenge plaintiffs standing in the context of a 12(b)(1) motion to dismiss also impacting the standing analysis.  A standing challenge under Federal Rule of Civil Procedure 12(b)(1) may be characterized as either a "facial attack" or a "factual attack." According to *Paterson v. Weinberger*, 644 F.2d 521 (5th Cir.1981), if a defendant merely files a Rule 12(b)(1) motion without supporting it with documentary evidence, a "facial attack" on standing, the trial court must look to the sufficiency of the allegations in the complaint because they are presumed to be true. *Id.* at 523.  If those jurisdictional allegations support subject matter jurisdiction, the complaint stands. *Id.*; *see also Barrett v. Johnson Controls, Inc*., 2003 WL 21500400 (N.D.Tex.2003).  In making a "factual attack" upon the court's subject matter jurisdiction, the defendant submits "affidavits, testimony, or other evidentiary materials." *Paterson*, 644 F.2d at 523.  Here, defendants and intervenors make a "facial attack" on jurisdiction and do not provide supporting documentary evidence.  Thus, the Court will consider the sufficiency of the allegations in the complaint in determining whether plaintiff has demonstrated standing.

A. *Injury in Fact*

Turning to the constitutional elements of standing, the plaintiff alleges that it will suffer a concrete injury by the enforcement of Act 134. The Fifth Circuit addressed the "injury in fact" prong of standing in *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217–18. "[A]n injury in fact [is] an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Bomer*, 274 F.3d at 217–18, citing *Lujan*. at 560, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351; see *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675, (1983) ("The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." (citations omitted)); se*e also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ("[A] party who invokes the court's authority [must] show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" (internal quotation marks omitted)).

When challenging a statute, the plaintiff "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298, 99 S. Ct. 2301, 2308-09, 60 L. Ed. 2d 895 (1979). However, the plaintiff "does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Id.* (citations omitted) (internal quotation marks omitted). "[The Fifth Circuit] and the Supreme Court have generally permitted future events which are sufficiently likely to occur to serve as a basis for standing," whether plaintiffs sought injunctive or declaratory relief. See *K.P. v. LeBlanc,* 627 F.3d 115, 122

(5th Cir. 2010) (plaintiffs seeking injunctive relief); *Venator Grp. Specialty, Inc. v. Matthew/Muniot Family, LLC.*, 322 F.3d 835, 840 (5th Cir. 2003) ("[I]n deciding whether to grant declaratory relief, the court must necessarily assess the likelihood that future events will occur . . . as it would were it evaluating the availability of legal as opposed to equitable relief."). Thus, plaintiffs may challenge the future injury as a result of the enforcement of the statute.

The Council contends that it suffers and injury-in-fact as a result of the Act 134's prohibition of PLAs with public entities. The Court notes that the Council has a "legally protected interest in both negotiating and enforcing a PLA." *Building and Const. Trades Dept., AFL-CIO v. Allbaugh*, 172 F.Supp.2d 67, 75 (D.D.C. 2001). In another factually similar case, *Idaho Bldg. and Const. Trades Council, AFL-CIO v. Wasden*, 836 F.Supp.2d 1146 (D.Idaho Dec. 22, 2011), the Trades Councils suffered a concrete injury by the Open Access Act of Idaho:

> By discouraging political subdivisions from negotiating a project labor agreement they would otherwise seek, enforcement of the Open Access Act could therefore result in a primary injury to Building Trades Councils. For example, should a political subdivision desiring to enter into a project labor agreement decline to negotiate such an agreement for fear that it will be criminally charged under the Open Access to Work Act, the Trades Councils' interests will be concretely affected as a result of the Act's enforcement.

*Id.* at 1159. Likewise, by deterring public entities in Louisiana from entering into PLAs with the plaintiff under penalty of a civil fine, the plaintiff's legal interests are "concretely affected" by Act 134. Though "not as concrete as some might be," the fact that the Council has not been denied a PLA but only the future possibility of entering into PLAs is sufficient. *KP v. LeBlanc*, 627 F.3d at 122; *see also Wasden*, 836 F.Supp.2d at 1159. Indeed, the plaintiff suggests that intervenors "implicitly conced[e]" that the Council will suffer concrete injury as intervenors claim that Act 134, for which it lobbied, has a "direct impact" on it and its members. (Rec. Doc.

22, at 9; Rec. Doc. 11, at 6).  Stated another way, plaintiff asserts that "if [intervenors are] injured by PLAs, then the Council is injured by the prohibition on PLAs."  (Rec. Doc. 22, at 9).  These adverse interests support the conclusion that the Council has presented an actual case or controversy.  That the Council will continue to be denied the ability to enter into PLAs with public entities satisfies the injury-in-fact requirement for standing as to injunctive relief and declaratory relief.

### B. *Causation*

The Council further argues that it established causation as the Attorney General is empowered to enforce the statute.  The Council concedes, however, that the Governor does not have specific authority to enforce Act 134.  (Rec. Doc. 22, at 14).  Nevertheless, the defendants and intervenors suggest that the alleged injury is in no way causally connected to the Attorney General.  (Rec. Doc. 20, at 5).  "The causation element does not require a party to establish proximate causation, but only requires that the injury be 'fairly traceable' to the defendant." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011) (*citing Bennett v. Spear*, 520 U.S. 154, 168–69, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)). Yet, if the existence of an element depends on government regulation of another person or entity, "much more is needed" to demonstrate standing, and the plaintiff must "adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562; 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351 (citations omitted).  "Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish."  *Id.* (citations omitted) (internal quotation marks omitted).   Nevertheless, the Supreme Court has stated that "[w]hile . . . it does not suffice if the injury complained of is

13

'th[e] result [of] the *independent* action of some third party not before the court,' that does not exclude injury produced by determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 169 (1997) (citation omitted) (emphasis in original); *see also Sierra Club v. Glickman,* 156 F.3d 606, 614 (5th Cir. 1998).

The defendants state that the Attorney General has no role in the "implementation" of Act 134. This is incorrect. In this case, the Attorney General has the power to enforce the Act, which invariably will force public entities to forgo PLAs with the Council. Under Louisiana Revised Statute 38:2220, the Attorney General has the power to bring suit against any public entity that enters into a contract violating provisions of "this Part," including Act 134 or Louisiana Revised Statute 38:2225.5, to declare the contract "null and void" and to seek a civil penalty of up to $50,000 against each offender.[2] Moreover, the Attorney General is constitutionally empowered to intervene in *any* civil proceeding. LA. CONST. ART. IV, §8. Should a potential PLA be declared "null and void," both parties would be injured: the Council and the public entity would be denied a PLA and the public entity would be subject to a fine. Though the Attorney General has not enforced the Act in this matter, it does not inhibit the tracing of the injury to the Attorney General. *See K.P.*, 627 F.3d at 123. There is no reason to assume the statute will *not* be enforced.[3] Even without the Attorney General's enforcement, the

---

[2] La. Rev.Stat. Ann. § 38:2220. ("A. Any purchase of materials or supplies, or any contract entered into for the construction of public works, contrary to the provisions of this Part shall be null and void.
B. The district attorney in whose district a violation of this Part occurs, the attorney general, or any interested party may bring suit in the district court through summary proceeding to enjoin the award of a contract or to seek other appropriate injunctive relief to prevent the award of a contract which would be in violation of this Part, or through ordinary proceeding to seek appropriate remedy to nullify a contract entered into in violation of this Part.

C. Where a judgment of nullity is rendered in any action brought by a district attorney or by the attorney general pursuant to Subsection B of this Section the district court may award a civil penalty not in excess of fifty thousand dollars against each offending member of the governing authority of the public entity who authorized the violation.")

[3] *See Virginia v. Am. Booksellers Ass'n, Inc*., 484 U.S. 383, 393, 108 S. Ct. 636, 643, 98 L. Ed. 2d 782 *certified question answered sub nom. Com. v. Am. Booksellers Ass'n, Inc*., 236 Va. 168, 372 S.E.2d 618 (1988) ("We are not

14

"mere existence" of the statute coerces public entities by the simple threat of liability.[4]  Thus, the Attorney General's enforcement and threat of enforcement is "fairly traceable" to the Council's injury.

### C.     *Redressability*

A plaintiff satisfies the redressability requirement of standing by showing it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011) (citing *Bennett*, 167, 117 S.Ct. 1154) (internal quotation marks omitted).  Still, a plaintiff "need not show that a favorable decision will relieve his *every* injury," but only that such a decision will "relieve a discrete injury to himself." *KP*, 627 F.3d at 123 (citing *Larson v. Valente*, 456 U.S. 228, 243 n. 15, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982)).

The Council contends that injunction of the Attorney General's enforcement of Act 134 as well as a declaration that the statute is unconstitutional would redress its injury.  Defendants and intervenors, on the other hand, contend that the Attorney General has no power to redress the injury again as he has "no role in the passage and/or implementation of this law."  (Rec. Doc. 20, at 5).  Defendants rely on *Okpalobi v. Foster* in supporting their argument that the defendants' actions are not fairly traceable to the injury alleged nor would the remedies requested redress the injury.  *See* 244 F.3d 405 (5th Cir. 2001).   In *Okpalobi*, the Governor and Attorney General had no power to enforce the statute, which was solely enforceable by private litigants, and therefore the Governor and Attorney General had no power to redress the injury.  *Id.* at 428-29.  Judge

---

troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise.")

[4] *See Okpalobi*, 244 F.3d at 435 (Benavides, J., concurring in part and dissenting in part).  ("But beyond enforcement, Act 825, by its mere existence, coerces the plaintiffs to abandon the exercise of their legal rights lest they risk incurring substantial civil liability. With respect to the Act's coercive effect, this case presents what this Court has recognized as the classic situation for declaratory relief."); *see also Am. Booksellers*, 484 U.S. 383, 392-93, 108 S. Ct. 636, 643, 98 L. Ed. 2d 782 ("[The] statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.") (citations and internal quotation marks omitted))

15

Higginbotham opined in concurring opinion in *Okpalobi* that the plaintiffs in that case failed to meet the causation and redressability requirements as "[t]he defendants could not threaten enforcement of the targeted state law; they lack the authority to do so." *Id.* at 431. The two officials in that case did not have "any duty or ability to do *anything*." *Id.* at 427.

Unlike *Okpalobi*, the Attorney General here has enforcement authority. An injunction of his enforcement would redress a discrete injury to the Council by prohibiting his enforcement of Act 134. *See K.P.*, 627 F.3d at 123. Furthermore, a declaration that Act 134 is unconstitutional would redress the injury by precluding the use of the statute by other litigants thereby providing a "substantial basis for confidence in the constitutionality of [the public entities'] conduct." *Okpalobi*, 244 F.3d at 436 (Benavides, J., concurring in part and dissenting in part). The relief would provide the Council the ability to enter into PLAs, remedying the plaintiff's exact injury. *Contra Henderson v. Stalder*, 287 F.3d 374 (5th Cir. 2002) (finding that a declaring state statute unconstitutional would not sufficiently redress the injury complained of).

In sum, the Court finds that the Council has demonstrated, based on the facts alleged in the Complaint, standing to assert its claims against the Attorney General. The Council concedes that the Governor of Louisiana has no role in enforcing Act 134; thus, as in *Okpalobi*, the Council lacks standing as to its claim against the Governor.

## IV.   ELEVENTH AMENDMENT IMMUNITY

Because this Court has determined plaintiff has standing, it is necessary to address the defendants' Eleventh Amendment defense as a potential bar to the plaintiff's claims. The Eleventh Amendment bars suits against non-consenting states and generally precludes actions against state officers in their official capacities. *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004). A narrow exception exists under *Ex parte Young*, and state officers

16

may be sued and a federal court "may enjoin state officials to conform their future conduct to the requirements of federal law." *McCarthy,* 381 F.3d at 412 (citations omitted). Despite the legal fiction of sovereign immunity that states cannot act unconstitutionally, "where a state actor enforces an unconstitutional law, he is stripped of his official clothing and becomes a private person subject to suit." *K.P. v. LeBlanc,* 627 F.3d at 124 (citation omitted).

To determine whether *Ex parte Young* applies, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871 (2002) (*citing Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 296, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)). Further, '[i]n order to use the *Ex Parte Young* exception, a plaintiff must demonstrate that the state officer has 'some connection' with the enforcement of the disputed act." *Id.* (citation omitted). *Ex parte Young* explains the importance of the enforcement requirement:

> The fact that the state officer, by virtue of his office, has some connection
> with the enforcement of the act, is the important and material fact, and
> whether it arises out of the general law, or is specially created by the act
> itself, is not material so long as it exists.

209 U.S. 123, 157, 28 S. Ct. 441, 453, 52 L. Ed. 714 (1908). The defendants rely on *Okpalobi* in asserting that they had no connection to the unconstitutional act as the defendants claim that the Attorney General had no "ability to commit" the unconstitutional act in question.[5] However,

---

[5] The Court here notes that it need not address whether the defendant had any "special relationship" in addition to "some connection" to the unconstitutional act. The Fifth Circuit later clarified in *K.P. v. LeBlanc* the precedential effect of *Okpalobi*'s Eleventh Amendment discussion: "Defendants rely heavily on the lead opinion in Okpalobi for the proposition that a "special" relationship—not just "some connection"—needs to exist. Because that part of the en

17

unlike in *Okpalobi*, the Attorney General here has the power to do something, specifically to "enforce" Act 134, committing the unconstitutional act in question.  The Court understands "enforcement" under the *Ex parte Young* analysis to mean simply "[t]o give force or effect" to the law, as discussed by Judge Dennis in *K.P.*  627 F.3d 115, 127 (5th Cir. 2010) (Dennis, J., concurring).  As previously discussed, the ability to enforce the statute creates a continuous and ongoing injury to the plaintiff—the denial of PLAs with public entities—by the coercive effect of the statute, and the injunctive and declaratory relief requested is sufficiently prospective.

Thus, the Attorney General is not immune under the Eleventh Amendment and may be sued under *Ex parte Young* for the purposes of enjoining his enforcement of Act 134.  Accordingly,

**IT IS ORDERED** that defendants' and intervenors' Rule 12(b)(1) Motions to Dismiss (Rec. Docs 20 and 21) for lack of jurisdiction is hereby **GRANTED** in part as to defendant Bobby Jindal, Governor of the State of Louisiana, and **DENIED** in part as to defendant James D. Caldwell, Attorney General of the State of Louisiana.  Furthermore, pursuant to Federal Rule of Civil Procedure 54(b), the Court finding no just reason for delay,

**IT IS ORDERED** that judgment be entered in favor of defendant Bobby Jindal, Governor of the State of Louisiana, and against plaintiff Southeast Louisiana Building and Construction Trades Council, AFL-CIO, dismissing their claims for injunctive relief against the defendant.

---

banc opinion did not garner majority support, the Eleventh Amendment analysis is not binding precedent." 627 F.3d 115, 124 (5th Cir. 2010) (citations omitted).

New Orleans, Louisiana, this 17th day of December, 2013.

_____
**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE**

**JUDGMENT**

Considering the foregoing Order, pursuant to Fed. R. Civ. P. 54(b),

**IT IS ORDERED, ADJUDGED, AND DECREED** that judgment be entered in favor of defendant Bobby Jindal, Governor of the State of Louisiana, and against plaintiff Southeast Louisiana Building and Construction Trades Council, AFL-CIO, dismissing their claims for injunctive relief against the defendant.

New Orleans, Louisiana, this   17th   day of        December        , 2013.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**